BAR COUNSEL *vs.* PETER S. FARBER.

Suffolk. December 4, 2012. - April 9, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Attorney at Law,* Disciplinary proceeding. *Board of Bar Overseers. Immunity from Suit. Words,* "Board."

This court concluded that under S.J.C. Rule 4:01, § 9, as appearing in 425 Mass. 1312 (1997), a bar discipline complainant is entitled to absolute immunity from civil liability with respect to his complaint filed with bar counsel or the Board of Bar Overseers (board), and his sworn testimony given or communications made to bar counsel or the board [786-791], or any hearing committee, special hearing officer, or hearing panel thereof [791-793]; further, the immunity is not restricted to particular causes of action [793].

A bar discipline complainant who filed an identical complaint with the division of professional licensure did not thereby affect the availability of immunity under S.J.C. Rule 4:01, § 9, as appearing in 425 Mass. 1312 (1997), with respect to his complaint filed with bar counsel and his testimony before a hearing committee of the Board of Bar Overseers. [793-794]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on December 13, 2011.

The case was reported by *Spina*, J.

*Constance V. Vecchione*, Bar Counsel.

*Peter S. Farber*, pro se.

BOTSFORD, J. Attorney Peter S. Farber filed a civil action against G. Russell Damon in the Superior Court in October of 2011, asserting claims of defamation, "wrongful instigation of civil proceedings," and violation of G. L. c. 93A. Each claim was based on allegedly false statements made in a complaint and follow-up communications that Damon had previously filed with bar counsel, and in testimony Damon gave in a public hearing before a hearing committee of the Board of Bar Overseers (board). Bar counsel thereafter filed this action for declaratory judgment in the county court. At the heart of the declaratory judgment action are questions concerning the scope of

immunity from civil liability afforded to bar discipline complainants by S.J.C. Rule 4:01, § 9 (§ 9), as appearing in 425 Mass. 1312 (1997).

*Background.* The pertinent underlying facts are essentially undisputed. Damon is a licensed real estate broker who works on Cape Cod. In the fall of 2008, he filed identical complaints with bar counsel and the division of professional licensure, claiming that Farber, an attorney admitted to the Massachusetts bar and a real estate broker, made misrepresentations to induce Damon to split a $13,000 real estate commission with him. The gist of Damon's complaint was that Farber fraudulently misrepresented certain facts to Damon in connection with a real estate purchase in which Farber was involved on behalf of the actual purchasers, leading Damon to give Farber one-half of the real estate commission he received from the sellers in connection with the sale. On November 25, 2009, bar counsel filed a petition for discipline against Farber; one of the counts was based on Damon's complaint and concerned Farber's conduct in connection with Damon. A hearing committee of the board heard the matter in May, 2010, and Damon testified as a witness called by bar counsel. The hearing committee made findings consistent with the allegations in the petition for discipline, including those relating to Damon, and recommended that Farber be suspended from the practice of law for one year and one day. The board adopted the hearing committee's factual findings but recommended that Farber receive a public reprimand, concluding that while Farber had made misrepresentations and thereby violated Mass. R. Prof. C. 8.4 (c), 426 Mass. 1429 (1998), he had done so while acting as a real estate broker, not as an attorney. In August, 2011, a single justice of this court agreed with the board and issued a decision and order of public reprimand. It appears that as a matter of routine policy, the board released the decision to local newspapers, which subsequently printed stories about it.

Approximately six weeks later, on October 11, 2011, Farber filed a civil action against Damon. All three claims that Farber included in his Superior Court complaint were based on statements made by Damon in (1) Damon's complaint filed with bar counsel, (2) a follow-up communication Damon later sent

to bar counsel, and (3) Damon's testimony before the hearing committee. Farber later notified bar counsel that he was intending to add her as a party in this suit.

Based on § 9, bar counsel requested that Farber dismiss his civil action against Damon on the grounds that Damon was immune from the civil liability sought by Farber. Farber refused to do so, stating that § 9 did not apply to the case. Bar counsel commenced a disciplinary proceeding against Farber on or about November 21, 2011, and then filed the present action for declaratory judgment and injunctive relief in the county court to resolve the controversy between the parties relating to the proper interpretation or construction of § 9.[1] Following initial pleadings and responses, bar counsel and Farber most recently have filed dispositive motions in the declaratory judgment action — a motion for judgment on the pleadings and for summary judgment by bar counsel and a cross motion for summary judgment by Farber. A single justice reserved and reported the case without decision to the full court, and ordered a stay with respect to further proceedings in the Superior Court until further order of this court.

*Discussion.* 1. *Interpretation of S.J.C. Rule 4:01, § 9.* Section 9 provides in relevant part:

"*Immunity.*

> "(1) Complaints submitted to the Board or to the bar counsel shall be confidential and absolutely privileged. The complainant shall be immune from civil liability based upon his or her complaint; provided, however, that such immunity from suit shall apply only to communications to the Board or the bar counsel and shall not apply to public disclosure of information contained in or relating to the complaint.

> "(2) The complainant and each witness giving sworn testimony or otherwise communicating with the Board or the bar counsel during the course of any investigation or

---

[1]At oral argument, bar counsel represented that if she prevailed in the declaratory judgment action and Farber thereafter dismissed his complaint against Damon in the Superior Court, she would seek to dismiss the pending disciplinary proceeding against Farber.

proceedings under this rule shall be immune from civil liability based on any such testimony or communications; provided, however, that such immunity from suit shall apply only to testimony given or communications made to the Board or the bar counsel and shall not apply to public disclosure of information attested to or communicated during the course of the investigation or proceedings."

Bar counsel reads the section to afford a complainant such as Damon absolute immunity from any civil liability with respect to his complaint and its allegations, see § 9 (1), and, of more direct concern in this case, with respect to testimony that the complainant may provide in the course of a proceeding before a hearing committee of the board, see § 9 (2).[2] She interprets the public disclosure provisos of § 9 (1) and (2) to mean that a complainant would not be entitled to the immunity conferred by the rule with respect to statements made or testimony provided by the complainant to a person or entity outside a bar disciplinary proceeding.

Farber rejects this reading. He accepts, as he must, see *Matter of Lupo*, 447 Mass. 345, 356-357 (2006), that under § 9 a complaint is absolutely privileged and the complainant is entitled to immunity from any civil liability based directly on the contents of the complaint or his communications to bar counsel or the board itself. However, Farber reads the public disclosure provisos of § 9 (1) and (2) to mean that *any* public disclosure of the substance of a complaint or a complainant's communications to bar counsel or the board — for example, in the form of testimony by the complainant at a public proceeding conducted by a hearing committee of the board or through the board's publication of a disciplinary decision[3] — will cause the complainant to lose that immunity. He makes a related argument that a

---

[2]Hearing committees are appointed by the Board of Bar Overseers (board), and the board may refer formal charges of lawyer misconduct for hearing and recommended disposition to them. See S.J.C. Rule 4:01, § 5 (3) (c), as appearing in 453 Mass. 1308 (2009); S.J.C. Rule 4:01, § 6, as appearing in 425 Mass. 1307 (1997). Proceedings before hearing committees on such formal charges generally are open to the public. See S.J.C. Rule 4:01, § 20, as amended, 438 Mass. 1301 (2002).

[3]The board has a policy of sending public disciplinary decisions to newspapers. In addition, the board and bar counsel provide copies of public docu-

complainant is not entitled to claim immunity relating to communications made or testimony provided to a hearing committee because a hearing committee is neither the board nor bar counsel, and only the board and bar counsel are listed in § 9 as permissible recipients of communications to which immunity applies.

We agree with bar counsel's reading of § 9 and reject the reading proffered by Farber. In explaining the reasons for this conclusion, we begin with the history of § 9 in its present form, because, contrary to Farber, we do not find the scope of the limitation to immunity appearing in the public disclosure provisos in § 9 (1) and (2) to be self-evident based on the language of the rule itself. See *Associated Subcontractors of Mass., Inc.* v. *University of Mass. Bldg. Auth.*, 442 Mass. 159, 164 (2004), quoting *Chandler* v. *County Comm'rs of Nantucket County*, 437 Mass. 430, 435 (2002) (where statutory language fails conclusively to reveal statute's meaning, court turns to other sources, including legislative history, to assist in interpretation); *Matter of the Liquidation of Am. Mut. Liab. Ins. Co.*, 440 Mass. 796, 801-802 (2004) (legislative history "sheds light" on Legislature's purpose in enacting statute).

Before July, 1993, the relevant provision of S.J.C. Rule 4:01, § 9, as amended, 370 Mass. 906 (1976), provided for a form of qualified immunity, stating in pertinent part:

> "Complaints submitted to the Board or to the Bar Counsel shall be confidential and conditionally privileged. The complainant shall be immune from liability based upon his complaint and any testimony given by him relative thereto, and any witness shall be immune from liability based upon his testimony given in the proceeding *provided that no such immunity shall be extended to a complainant or witness who is responsible for any unreasonable disclosure of the complaint or testimony adduced in the proceeding or who acts in bad faith*" (emphasis supplied).

In October of 1991, the board proposed amendments that would for the first time open bar disciplinary proceedings to the public

ments, including disciplinary decisions and reports of hearing committees, to any person or entity requesting them.

after the service of a formal petition for discipline, meaning, among other things, that absent a protective order, the public would have access to the board docket, would be entitled to attend proceedings and arguments before a hearing committee or an appeal panel of the board, and would be entitled to review reports and decisions issued by hearing committees, appeal panels, and the board itself. Of direct relevance here, the board also proposed at this time that the qualified immunity given complainants and witnesses in bar discipline proceedings under § 9 be amended so that complaints submitted to the board or bar counsel would be absolutely privileged, and both complainants and witnesses giving sworn testimony during the course of any investigation or proceeding under S.J.C. Rule 4:01 would be immune from civil liability based upon any testimony given by them.[4] Thereafter, this court published the board's proposed rule changes and solicited public comment. Introductory Statement, 9 Mass. Att'y Discipline Rep. v (1993) (Statement). On October 26, 1992, the board submitted to the court a version of its suggested changes to S.J.C. Rule 4:01 that was somewhat revised from the original proposal to reflect some of the comments received. *Id.* Most of the comments, and most of the board's revisions to its original proposal, concerned the opening of formal disciplinary proceedings to the public and immunity. See Letter of Board Counsel, 9 Mass. Att'y Discipline Rep. ix, ix-x (1993) (Letter). However, the board also suggested changes to the language of its originally proposed revision to § 9 and, most substantively, suggested adding the public disclosure provisos of § 9 (1) and (2).[5] *Id.* at xxi-xxii. The court adopted

---

[4]The third change proposed by the board in 1991 was to add lay members to hearing committees appointed by the board. See Introductory Statement, 9 Mass. Att'y Discipline Rep. v, v-vi (1993).

[5]The board's general counsel described the reason for the proposed change as follows:

"A few bar associations have objected to the Board's recommendation that complainants be accorded absolute immunity, a recommendation that would make the Commonwealth the forty-fifth American jurisdiction to do so. The objectors have misunderstood the proposed rule. The proposed rule as drafted was intended to protect only communications to the Board and Bar Counsel. *The rule does not purport to extend immunity to a complainant who makes the same allegations to a news reporter.* See the commentary [to] Rule 12 of the ABA

all of the board's proposed amendments. See S.J.C. Rule 4:01, 415 Mass. 1307 (1993); Statement, *supra* at v.

This history of the 1993 amendments strongly supports the conclusion that the public disclosure provisos in § 9 were intended to clarify that the absolute immunity provided by § 9 applies only to complaints, testimony, and other communications provided in the course of a bar disciplinary proceeding, and not generally to the substantive contents of any such communications in whatever separate forum they might be published or disclosed. Nothing in the history supports the view advanced by Farber that the public disclosure provisos were intended to condition the availability of immunity on whether the complaint, testimony, or other communication provided in a disciplinary proceeding is kept confidential.

The interpretation of the public disclosure provisos advanced by Farber would undermine the basic purpose of providing immunity to complainants and witnesses. The board modeled the absolute immunity provision in § 9 on Rule 12 of the American Bar Association's Model Rules for Lawyer Disciplinary Enforcement (2007 ed.) (Model Rules) and the commentary. See note 5, *supra*. The commentary to rule 12 makes clear that absolute immunity for complainants and witnesses is intended to encourage those who believe a lawyer has acted improperly or inappropriately to engage in the bar disciplinary system by filing a complaint. See Model Rules, *supra* at 32 ("A policy of conferring absolute immunity on the complainant encourages those who have some doubt about a lawyer's conduct to submit the matter to the proper agency, where it may be examined and determined. Without immunity, some valid complaints will not be filed").[6] If, as Farber suggests, a complainant's immunity

---

Model Rules for Lawyer Disciplinary Enforcement, which was the model for the Board's proposal. In order to clarify the scope of the immunity suggested, the Board proposes adding a proviso that immunity would extend 'only to communications to the Board and Bar Counsel and shall not apply to public disclosure [of] information contained in or relating to the complaint' or information 'communicated during the course of the investigation or proceedings.' " (Emphasis supplied.)

Letter of Board Counsel, 9 Mass. Att'y Discipline Rep. ix, xxi-xxii (1993).

[6]Many States afford absolute immunity from civil liability for communications and testimony provided to the State bar discipline authority. See *Morgan*

from civil liability is lost when he is called on to testify at a public hearing before a hearing committee,[7] the complainant may well decide that the personal risks associated with filing a complaint are too great to do so. We will not adopt an interpretation of § 9 that would discourage, rather than encourage, clients and others with knowledge of possible attorney misconduct from engaging and cooperating in the bar discipline process. See *Champigny* v. *Commonwealth*, 422 Mass. 249, 251 (1996) (court construes statute in accord with Legislature's intent, taking into account "main object to be accomplished . . . and to avoid imputing a '[b]arrenness of accomplishment' "). It is more consistent with the plain language of § 9 and the history of the public disclosure provisos (see note 5, *supra*), to interpret the rule as providing a complainant with immunity in relation to his actual communications or testimony provided in a bar discipline proceeding, but rendering immunity unavailable with respect to the information contained in those communications or testimony if the complainant publicly discloses such information in a forum outside the bar discipline system.

2. *Meaning of the term "board" in § 9.* Farber contends that

& *Pottinger, Attorneys, P.S.C.* v. *Botts*, 348 S.W.3d 599, 603-604 & n.2 (Ky. 2011), listing other State statutes and court rules and citing other State decisions. The policy underlying the granting of immunity is to ensure a vigorous system of self-regulation of attorneys by protecting those who would complain about a lawyer's conduct against expensive retaliatory suits by the lawyer in response. See *id.* at 604 ("In order to maintain a self-regulating profession, the investigation of unethical conduct must be vigorous and complainants must be free from threat of *any* civil liability. Any lesser grant of immunity would have a chilling effect on the reporting of attorney misconduct. . . . When the complainant is not an attorney, there is an inequitable balance of power which creates a very real opportunity for attorney intimidation" [emphasis in original]). See also *Tobkin* v. *Jarboe*, 710 So. 2d 975, 977 (Fla. 1998).

[7] A complainant chooses whether to file a complaint against an attorney with bar counsel or the board. But if the complaint, once filed, leads to a formal petition for discipline and a public hearing before a hearing committee, the complainant does not have the choice to decline to testify. The board and bar counsel have subpoena power and may compel a witness, including a complainant, to testify. See S.J.C. Rule 4:01, § 22, as appearing in 425 Mass. 1330 (1997). Ironically, therefore, under the interpretation of § 9 suggested by Farber, the more meritorious the complaint against an attorney, the greater the likelihood that the complainant will lose his immunity from liability, because meritorious complaints are the most likely to become subjects of formal petitions for discipline that are public once filed and in turn may lead to a public hearing.

under § 9 (2), a complainant is entitled to claim immunity solely with respect to sworn testimony or other communications made directly to the board or bar counsel, and not to a hearing committee of the board. The major premise of this argument is the fact that S.J.C. Rule 4:01 contains discrete sections that specifically identify (1) the board, (2) bar counsel, and (3) hearing committees, and describe in some detail each of their distinct roles and functions. See S.J.C. Rule 4:01, § 5, as amended, 430 Mass. 1314 (1999); S.J.C. Rule 4:01, § 7, as appearing in 453 Mass. 1309 (2009); S.J.C. Rule 4:01, § 6, as appearing in 425 Mass. 1307 (1997).[8]

Although it is correct that S.J.C. Rule 4:01 primarily uses the term "board" to refer specifically to the board itself and its discrete functions and not to incorporate hearing committees, for the reasons discussed previously, adopting such an interpretation of the term in the context of § 9 would defeat the fundamental purpose of the immunity rule to encourage those knowing of or suspecting attorney misconduct to participate in the bar disciplinary system. See *Halebian* v. *Berv*, 457 Mass. 620, 628 (2010), citing 2A N.J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction § 47.25, at 429 (7th ed. 2007), and quoting *Brady* v. *Brady*, 380 Mass. 480, 484 (1980) (in construing statutes, maxim "that the express inclusion of one thing implies the exclusion of another" will not be followed when doing so "would frustrate the general beneficial purposes of the legislation"). In view of that purpose, it is clear that the word "board" in § 9 is intended to be defined more generally to encompass not only the board itself but also the hearing committees, special hearing officers, and hearing panels that the

---

[8]Farber finds additional support for his interpretation in the fact that Rule 12(A) of the American Bar Association's Model Rules for Lawyer Disciplinary Enforcement (2007 ed.) (Model Rules) provides that "[c]ommunications to the board, *hearing committees,* or disciplinary counsel relating to lawyer misconduct . . . and testimony given in the proceedings shall be absolutely privileged, and no lawsuit predicated thereon may be instituted against any complainant or witness" (emphasis added). *Id.* at 31. Farber's argument is that if Rule 12(A) was the model for § 9, the absence of any reference to the term "hearing committees" in § 9 must be taken as an intentional omission. We disagree. The Model Rules are just that. We do not infer from the failure of § 9 to track exactly the language of rule 12(A) that § 9 is intended to exclude hearing committees from the definition of "board."

board appoints to carry out necessary steps in the bar disciplinary system under the aegis of the board.[9] Farber's argument must be rejected.

3. *Additional considerations.* We address three additional points.

a. The first concerns the complaint that Damon filed with the division of professional licensure (division). The parties represent that Damon's filings with bar counsel and the division are identical. Farber suggests that by virtue of the division filing, Damon made a public disclosure of the contents of his complaint filed with bar counsel and, by doing so, removed any immunity that he otherwise would have been entitled to claim under § 9 (1). Bar counsel responds that Damon's filing with the division may expose him to potential liability to Farber but does not affect the availability of immunity under § 9 with respect to Damon's complaint filed with bar counsel and his testimony before the hearing committee. Bar counsel is correct. As we have discussed *supra*, the public disclosure provisos in § 9 (1) and (2) mean that a complainant cannot be held liable on account of the actual communications made or testimony provided to bar counsel or the board (or hearing committee) but can claim no immunity from liability — at least under § 9 — on account of other, substantively identical communications that the complainant makes outside the bar disciplinary process. In such a situation, however, any damages obtained could not relate to the bar discipline communications themselves, because an award of any such damages by definition would be inconsistent with the concept of absolute immunity.

b. Farber argues that if Damon is entitled to immunity at all, it should extend only to immunity from liability for a claim of defamation, and not to Farber's other two causes of action in

---

[9]The board appoints hearing committees. See note 2, *supra.* In addition, under S.J.C. Rule 4:01, § 6 (4), as amended, 453 Mass. 1306 (2009), the term "hearing committee" also means a special hearing officer or hearing panel. A special hearing officer may be a board member himself or herself, and a hearing panel refers to a hearing panel of board members. Finally, under the board's rules, the board chair has discretion to designate any hearing to be held before a hearing committee, a special hearing officer, a hearing panel of the board, or the full board. Rule 3.19 (a) of the Rules of the Board of Bar Overseers (2012). As a practical matter, therefore, in the specific context of hearings, the terms "hearing committee" and "board" may overlap.

his Superior Court complaint. This argument lacks merit. The immunity extended by § 9 is from "civil liability" with respect to a discipline-related complaint, communications, and testimony. The rule does not restrict the immunity to particular causes of action. Under § 9, Damon is entitled to immunity from liability with respect to all three of Farber's causes of action insofar as they relate to Damon's complaint filed with bar counsel, his communications with bar counsel, and his testimony before the hearing committee.

c. Finally, Farber contends that bar counsel improperly withheld one of Damon's filings from him and from the hearing committee and by such conduct essentially stripped the proceeding of any semblance of the fairness that is necessary to support a rule of immunity. The proper forum to raise such a claim concerning bar counsel's conduct is in the bar disciplinary process itself.[10] It is not relevant to the task of seeking to interpret the scope of immunity granted by § 9.

*Conclusion.* Under S.J.C. Rule 4:01, § 9, a complainant is entitled to absolute immunity from civil liability with respect to his complaint filed with bar counsel or the board, and his sworn testimony given or communications made to bar counsel or the board, or any hearing committee, special hearing officer, or hearing panel thereof. The matter is remanded to the county court for entry of judgment consistent with this opinion.

*So ordered.*

---

[10]In her reply brief, bar counsel states that, as indicated in the counterclaim filed in the county court, Farber raised this claim of the withholding of Damon's filing in his appeal from the hearing committee's recommended decision to the board, seeking to have the hearing reopened, but that the board neither ordered the hearing reopened nor revised the hearing committee's findings of fact.